**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ROY ARNOLD JR., | |
| *Plaintiff*, | |
| v. | No. 25-cv-00390 (DLF) |
| TALLEY ROBERTA HOLMES, *et al.*, | |
| *Defendants.* | |

## <u>MEMORANDUM OPINION</u>

Roy Arnold Jr., proceeding *pro se*, brings this action against individuals and law firms whom he alleges have conspired to execute a fraudulent foreclosure on his home. Before the Court are certain defendants' motions to dismiss, *see* Dkt. 31; Dkt. 32, and Arnold's motions for default judgment against two other defendants, *see* Dkt. 52; Dkt. 53. For the reasons that follow, the Court will dismiss Arnold's federal claims against the moving defendants for failure to state a claim, dismiss Arnold's state law claims against the moving defendants for lack of subject matter jurisdiction, and deny Arnold's motions for default judgment.

## I.    BACKGROUND

Arnold resides at 5221 Dix Street NE in Washington, D.C. Compl. ¶ 1, Dkt. 1. He alleges that he received a purchase money loan for the property from Talley R. Holmes Jr. (Mr. Holmes) in 2013, and that Mr. Holmes—who owned the property—"took a [first] position lien" against it. *Id.* ¶ 7.

After Mr. Holmes passed away in 2022, defendant William Payne, by and through defendant The Law Firm of Payne and Associates, sent Arnold a letter requesting payment for Mr. Holmes's daughter—defendant Talley Roberta Holmes (Holmes)—as successor in interest to the

promissory note.  Compl., Ex. A, at 1, Dkt. 1-1; *see* Compl. ¶ 14.  The letter stated that Arnold had last made a mortgage payment in March 2021, and that the balance of the loan as of July 20, 2023, was "significantly more than $232,046.52."  Compl., Ex. A, at 1.  Arnold alleges that he informed Payne that "it had come to his attention that [Mr. Holmes] was not licensed as a Mortgage Lender at the inception of the 'Purported Loan' in 2013."  Compl. ¶ 14.  He further conveyed that, because Mr. Holmes had "violated DC Code 26-1103 as an unlicensed mortgage lender," there was "no salable loan in relation to the 'purported' purchase money loan agreed upon."  *Id.*

On July 22, 2024, defendant Jung Kim, by and through defendant Offit Kurman Attorneys at Law, sent Arnold a letter on behalf of defendants the Estate of Talley R. Holmes Jr. (the Estate) and James B. Thomas.  Compl., Ex. B, at 1, Dkt. 1-1.  The letter represented that the Estate and Thomas were the lenders under the promissory note and that Arnold had defaulted on the loan. *Id.*; *see* Compl. ¶ 16.  The letter stated that, in order to cure the default, Arnold "must deliver certified funds . . . in the sum of $292,281.81 no later than August 23, 2024."  Compl., Ex. B, at 1 (footnote and emphases omitted).  It further warned that Arnold's failure to cure the default may result in foreclosure.  *Id.*

On July 24, 2024, Arnold sent Kim, Holmes, the Estate, and Thomas a "Demand Letter," Compl., Ex. C, at 1, Dkt. 1-1, requesting "evidence/documentation" that he "made a promise to pay" Thomas or the Estate "any amount," *id.* at 2; *see id.* at 2–4.  He also requested, among other things, "evidence/documentation" of any licenses that authorized Thomas or the Estate "to engage in the business of mortgage lending and/or mortgage servicing in the District of Columbia."  *Id.* at 2.

On July 11, 2024, Arnold sent Holmes a lengthy letter requesting an accounting of and documentation for the loan.  *See generally* Compl., Ex. D, Dkt. 1-1.  He similarly sent a "Debt

Validation Letter" to Kim, Holmes, the Estate, and Thomas on August 14, 2024.  *See generally* Compl., Ex. E, Dkt. 1-1.

On February 10, 2025, Arnold filed the instant Complaint against Holmes; the Estate; Paloma Holmes; attorney Darrel Parker and the firm Roundtree, Knox, Hunter & Parker; attorney Kim and the firm Offit Kurman Attorneys at Law; attorney Payne and The Law Firm of Payne & Associates; Thomas; and Leah Walker.  Arnold broadly alleges that the defendants "conspired to foreclose on [his] Home when they do not have a lawful right to foreclose and have, at most, an unsecured debt."  Compl. ¶ 12.  His Complaint sets forth ten specific claims for relief: civil conspiracy in violation of 42 U.S.C. § 1983 (Count I); fraudulent misrepresentation in violation of D.C. law (Count II); violation of the D.C. Consumer Protection Procedures Act (Count III); violation of Title XIV of the Dodd-Frank Act and Predatory Lending Elimination Act (Count IV); fraud in the second degree in violation of D.C. law (Count V); violation of the Fair Debt Collection Practices Act (Count VI); slander of title (Count VII); gross negligence (Count VIII); violation of D.C. Code 28-3814 (Count IX); and violation of D.C. Code 26-1114 (Count X).  *See id.* ¶¶ 74–137.  He seeks punitive damages, special damages, attorney's fees, a declaratory judgment, and a permanent injunction.  *See id.* ¶¶ 53–73, 138–48.

Defendants Payne and The Law Firm of Payne & Associates filed an answer to the Complaint.  Dkt. 29.  Defendants Kim, Offit Kurman Attorneys at Law, Holmes, and the Estate filed motions to dismiss.  Dkt. 31; Dkt. 32.[1]  Defendants Thomas, Paloma Holmes, and Walker

---

[1] Defendants Parker and Roundtree, Knox, Hunter & Parker also filed a motion to dismiss, Dkt. 30, but were subsequently dismissed from this case, *see* October 8, 2025 Minute Order; Notice of Voluntary Dismissal of Def. Roundtree, Knox, Hunter & Parker, Dkt. 82.  As such, the Court dismissed the motion as moot.  January 22, 2026 Minute Order.  Similarly, although the Estate joined in Holmes's motion to dismiss, the Estate was also later dismissed from this case.  *See* October 8, 2025 Minute Order.

failed to respond to the Complaint, and the Clerk of Court filed an entry of default against each. *See* Dkt. 44; Dkt. 45; Dkt. 46.

## II.  LEGAL STANDARDS

"Federal courts are courts of limited jurisdiction," and it is "presumed that a cause lies outside this limited jurisdiction."  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  The burden of establishing jurisdiction thus falls upon the party invoking it.  *Id.*; *see Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).  "While complaints filed by *pro se* litigants are held to less stringent standards than those applied to formal pleadings drafted by lawyers, even a *pro se* plaintiff bears the burden of establishing that the Court has subject matter jurisdiction." *Newby v. Obama*, 681 F. Supp. 2d 53, 55 (D.D.C. 2010) (citation modified).  Moreover, "because it involves a court's power to hear a case," subject matter jurisdiction "can never be forfeited or waived."  *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006) (citation modified).  To the contrary, courts have "an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party."  *Id.*; *see Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012) ("When a requirement goes to subject-matter jurisdiction, courts are obligated to consider *sua sponte* issues that the parties have disclaimed or have not presented.").  If a court "determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."  Fed. R. Civ. P. 12(h)(3).

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a defendant to move to dismiss a complaint for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  To survive a Rule 12(b)(6) motion, a complaint must contain factual matter sufficient to "state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A facially plausible claim is one that "allows the court to draw the reasonable inference

that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While this standard does not amount to a specific probability requirement, it does require "more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level."). A complaint need not contain "detailed factual allegations," but factual allegations that are "merely consistent with a defendant's liability . . . stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (citation modified). And while the Court construes *pro se* complaints "liberally," *Estelle v. Gamble*, 429 U.S. 97, 106 (1976), even a *pro se* complaint must "plead factual matter that permits the court to infer more than the mere possibility of misconduct," *Jones v. Horne*, 634 F.3d 588, 596 (D.C. Cir. 2011) (citation modified).

Finally, in deciding a motion to dismiss a *pro se* plaintiff's complaint, the Court must consider the plaintiff's complaint "in light of all filings." *Brown v. Whole Foods Mkt. Grp.*, 789 F.3d 146, 152 (D.C. Cir. 2015) (citation modified).

## III.    ANALYSIS

### A.    Jurisdiction

The subject matter jurisdiction of the federal district courts is set forth generally at 28 U.S.C. §§ 1331 and 1332. Under these statutes, federal jurisdiction is available when a federal question is presented, 28 U.S.C. § 1331, or when the parties are of diverse citizenship and the amount in controversy exceeds $75,000, *id.* § 1332.

As relevant here, "diversity jurisdiction does not exist unless *each* defendant is a citizen of a different State from *each* plaintiff." *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 373 (1978). "An individual has citizenship in a state for diversity purposes if he is an American citizen and is domiciled in the state." *CostCommand, LLC v. WH Adm'rs, Inc.*, 820 F.3d 19, 21 (D.C.

Cir. 2016).  "Domicile is determined by two factors: physical presence in a state, and intent to remain there for an unspecified or indefinite period of time."  *Prakash v. Am. Univ.*, 727 F.2d 1174, 1180 (D.C. Cir. 1984).  As such, domicile and residence are not coextensive—"a person may have multiple residences, but may have only one domicile, and a person may be a resident of one locality, but be domiciled in another."  *Core VCT Plc v. Hensley*, 59 F. Supp. 3d 123, 126 (D.D.C. 2014).

While Arnold's federal claims bring this suit within the Court's federal question jurisdiction, Arnold has not pleaded sufficient facts to assure the Court that it has diversity jurisdiction over his suit.  Arnold is a resident of the District of Columbia and, over the course of this litigation, has moved to dismiss certain defendants who appear to be domiciled in the District.  *See, e.g.*, October 8, 2025 Minute Order (granting Arnold's Motion to Dismiss Defendants Darrel Parker and the Estate of Talley R. Holmes Jr. Without Prejudice, Dkt. 71).  On December 1, 2025, the Court entered a minute order directing Arnold to file a memorandum "setting forth the state citizenship of each remaining defendant at the time the Complaint was filed."  December 1, 2025 Minute Order.  After voluntarily dismissing his claims against another defendant, *see* Notice of Voluntary Dismissal of Def. Roundtree, Knox, Hunter & Parker, Arnold filed the ordered memorandum, *see generally* Mem. of Points and Authorities, Dkt. 84.

At this time, the Court concludes that Arnold has not met his "burden of pleading the citizenship of each and every party to the action."  *Naartex Consulting Corp. v. Watt*, 722 F.2d 779, 792 (D.C. Cir. 1983).  In particular, Arnold has provided insufficient information regarding the citizenship of defendants Kim and Holmes for the Court to conclude that there is complete diversity among the parties.  Arnold alleges that Kim was served at his residence in Virginia and Holmes was served at her residence in Maryland.  *See* Mem. of Points and Authorities 3–5.  As to

both defendants, he relies primarily on the location in which the defendants were served and general allegations regarding the defendants' residences; he further alleges that Holmes listed a Maryland address as her primary residence on probate filings. *See id.* But "'[d]omicile' is not necessarily synonymous with 'residence,' and one can reside in one place but be domiciled in another." *Miss. Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48 (1989) (citation modified). Furthermore, Arnold's own filings throughout the course of this litigation set forth contradictory allegations regarding Kim and Holmes's respective places of residence. In his Complaint, Arnold listed a Maryland address for Kim and a District of Columbia address for Holmes. *See* Compl. 1–2. But he later filed a motion stating that "[i]t ha[d] been brought to [his] attention" that Kim resided in the District of Columbia and that Holmes resided in both the District of Columbia and Maryland. *See* Mot. for Order to Serve Summonses at Alternative Addresses, Dkt. 11. Kim was ultimately served in Virginia, Proof of Service (Kim), Dkt. 13, while Holmes was served in both Maryland, U.S. Marshals Process Receipt and Return (Holmes), Dkt. 16, and the District of Columbia, Proof of Service (Holmes), Dkt. 14.

While the Court is mindful of Arnold's *pro se* status, it concludes that his shifting allegations and contradictory filings preclude a finding of complete diversity in this case. *See Hayman v. BLDG Metro Cap. LLC*, No. 22-cv-2092, 2023 WL 5951976, at *4 (D.D.C. Sept. 13, 2023) (*pro se* plaintiff "provided inadequate information about the parties' citizenship for the Court to find complete diversity"); *Humphries v. Newman*, No. 18-cv-2936, 2022 WL 612657, at *6 (D.D.C. Mar. 2, 2022) (similar), *aff'd*, No. 22-7043, 2022 WL 3449226 (D.C. Cir. Aug. 11, 2022).[2]

---

[2] Arnold's allegation that Holmes listed a Maryland address as her primary residence on probate filings does not alter this analysis. Holmes filed the petition for probate in April 2023, *see* Case

Accordingly, the Court has only federal question jurisdiction over Arnold's claims.

**B.    Federal Claims**

Defendants Kim, Offit Kurman Attorneys at Law, and Holmes move to dismiss Arnold's federal claims for failure to state a claim.  For the reasons that follow, the Court will grant the defendants' motions as to these claims.

1.    *§ 1983*

Count I of the Complaint invokes 42 U.S.C. § 1983, alleging that various defendants "conspired to foreclose on [Arnold's] Home unlawfully."  Compl. ¶ 77; *see id.* ¶¶ 74–80.  But § 1983 applies only to state actors.  *See Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982) ("[T]he party charged with the deprivation must be a person who may fairly be said to be a state actor.").  Because Arnold has not alleged that any of the defendants acted under color of state law, *see Gomez v. Toledo*, 446 U.S. 635, 640 (1980), the Court will dismiss this claim.

2.    *Dodd-Frank Act and Predatory Lending Elimination Act*

Count IV of the Complaint alleges that Holmes violated Title XIV of the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010—also known as the Mortgage Reform and Anti-Predatory Lending Act—by "tak[ing] money from [him] when she was not the true lender and when she was aware that the statute of limitations had expired on the promissory note."

---

No. 2023-ADM-000459 (D.C. Super. Ct.), nearly two years before Arnold filed the Complaint in this case, *see Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 36 n.5 (2025) (in diversity cases, a party's citizenship is evaluated at the time the suit is brought); *Grupo Dataflux v. Atlas Global Grp., L.P.*, 541 U.S. 567, 570–77 (2004) (same).  Furthermore, it appears that at least one other case from the same timeframe associates Holmes with a District of Columbia address.  *See* Case No. 2023-CAB-000530 (D.C. Super. Ct.).  For these reasons, Arnold cannot use the probate filings to meet his burden to establish diversity jurisdiction.

Compl. ¶ 102; *see id.* ¶¶ 96–102.[3]

Arnold has failed to state a claim as to the Mortgage Reform and Anti-Predatory Lending Act. While a *pro se* complaint "must be held to less stringent standards than formal pleadings drafted by lawyers[,] . . . even a *pro se* complainant must plead factual matter that permits the court to infer more than the mere possibility of misconduct." *Atherton v. D.C. Office of Mayor*, 567 F.3d 672, 681–82 (D.C. Cir. 2009) (citation modified). Here, Arnold fails to allege which provision(s) of the Mortgage Reform and Anti-Predatory Lending Act Holmes violated. Absent such an allegation, the Court cannot "draw [a] reasonable inference that the defendant is liable for the misconduct alleged," *Iqbal*, 556 U.S. at 678; *cf. Jah Kente Int'l, Inc. v. Indus. Bank of Washington, D.C.*, No. 22-cv-00848, 2023 WL 11056262, at *2 (D.D.C. June 26, 2023) (court could not draw reasonable inference that the defendant was liable for the misconduct alleged where the plaintiff "nowhere identifie[d] which provision of the Federal Reserve Act Defendant allegedly violated"), or, more fundamentally, determine whether Arnold has a cause of action to pursue his claim, *see Johnson v. Cap. One Bank, N.A.*, No. 22-7042, 2023 WL 2733486, at *1 (D.C. Cir. Mar. 31, 2023) (per curiam) (a party may not seek relief on "provisions of the Dodd-Frank Wall Street Reform and Consumer Protection Act that confer no private right of action"). The Court will therefore also dismiss this claim.

### 3.    *Fair Debt Collection Practices Act*

Finally, Count VI of the Complaint alleges that various defendants violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* Compl. ¶¶ 110–20. As relevant here, Arnold alleges that defendants Kim and Offit Kurman Attorneys at Law (1) "mailed a Fraudulent Notice

---

[3] Count IV further alleges that Holmes violated the Predatory Lending Elimination Act. While a bill of that name was introduced in the Senate in 2023, it has not been passed by Congress or signed into law.

of Default and Demand for Payment Letter to [him] listing James B. Thomas and The Estate of Talley R. Holmes Jr. as the Lenders," *id.* ¶ 111, and "initiated pre-foreclosure on [his] home," *id.* ¶ 115, despite knowing that neither Thomas nor the Estate had loaned him money and that Holmes was the beneficiary of any property interest in the home, *id.* ¶¶ 113–15; and (2) sent deficient notice letters and ignored Arnold's debt validation letters, *id.* ¶¶ 116–18.  Arnold also identifies defendants Walker, Paloma Holmes, and Holmes in Count VI of the Complaint but does not offer any allegations as to their violations.

Arnold has failed to state a claim for relief under the Fair Debt Collection Practices Act. The Act applies only to "debt collector[s]," which are defined by statute to include (1) "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another"; (2) "any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts"; and (3) for certain purposes, "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests."  15 U.S.C. § 1692a(6); *see Henson v. Santander Consumer USA Inc.*, 582 U.S. 79, 81 (2017) ("[T]hird party debt collection agents generally qualify as 'debt collectors' under the relevant statutory language, while those who seek only to collect for themselves loans they originated generally do not.").

Here, Arnold has neither identified the specific provisions of the Fair Debt Collection Practices Act that the defendants allegedly violated nor alleged sufficient facts for the Court to infer that any of the defendants is a "debt collector" within the meaning of the Act.  As such, he has failed to allege facts sufficient to state a claim for relief.  *See Iqbal*, 556 U.S. at 678; *Bank of*

*N.Y. Mellon Trust Co. N.A. v. Henderson*, 107 F. Supp. 3d 41, 47 (D.D.C. 2015) ("Defendant has not alleged that plaintiff's principal business purpose is debt collection or that it is attempting to collect a debt due another.  As such, he has not alleged a basis for applying the FDCPA in this case." (citation modified)), *aff'd*, 862 F.3d 29 (D.C. Cir. 2017); *Johnson*, 2023 WL 2733486, at *1 ("Appellant's claim based on the Fair Debt Collection Practices Act fails because she has not alleged facts showing that appellees qualify as a 'debt collector.'"); *Knight v. Exeter Fin., LLC*, No. 23-cv-2850, 2024 WL 3887385, at *2–3 (D.D.C. Aug. 20, 2024) (similar).  Accordingly, the Court will dismiss this claim.

### C.   State Law Claims

Because the Court will dismiss Arnold's federal law claims, the Court must determine whether it will continue to exercise supplemental jurisdiction over his remaining state law claims. When a court dismisses "all claims over which it has original jurisdiction," it has the discretion under 28 U.S.C. § 1367(c) to decline to exercise supplemental jurisdiction over any remaining state law claims.  28 U.S.C. § 1367(c)(3); *see Trimble v. District of Columbia*, 779 F. Supp. 2d 54, 59–60 (D.D.C. 2011) (declining to exercise supplemental jurisdiction over remaining state law claims).  In exercising that discretion, courts consider "judicial economy, convenience, fairness, and comity."  *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988).  "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims."  *Id.* at 350 n.7; *see Edmondson & Gallagher v. Alban Towers Tenants Ass'n*, 48 F.3d 1260, 1265–67 (D.C. Cir. 1995).

Here, the relevant factors weigh against exercising jurisdiction over Arnold's state law claims.  To start, this "case has not progressed beyond defendants' first motion, and the Court has not developed any familiarity with [Arnold]'s state-law claims."  *Deppner v. Spectrum Health*

*Care Res., Inc.*, 325 F. Supp. 3d 176, 191 (D.D.C. 2018).  Furthermore, Arnold "will not be prejudiced in any way by dismissal," *id.*, both because the Court is dismissing his claims without prejudice and because he is not time-barred from filing any of his claims in state court.  The supplemental jurisdiction statute "not only provides for a thirty-day grace period for refiling in state court after dismissal" but also "stops the clock on any otherwise-applicable limitations period during the pendency of the federal-court suit."  *Id.*; *see* 28 U.S.C. § 1367(d); *Artis v. District of Columbia*, 583 U.S. 71, 74–77 (2018).  Because the Court declines to exercise supplemental jurisdiction over Arnold's state law claims, it will dismiss those claims without prejudice for lack of subject matter jurisdiction.

### D.    Motions for Default Judgment

Having dismissed Arnold's federal claims for failure to state a claim and his state law claims for lack of subject matter jurisdiction, the Court will deny Arnold's motions for default judgment against defendants Thomas and Walker.

Obtaining a default judgment is a two-step process.  *Carpenters Lab.-Mgmt. Pension Fund v. Freeman-Carder LLC*, 498 F. Supp. 2d 237, 239 n.1 (D.D.C. 2007).  First, the plaintiff must request that the Clerk of Court enter default against the party who "has failed to plead or otherwise defend."  Fed. R. Civ. P. 55(a).  The Clerk's entry of default establishes the defendant's liability for the well-pleaded allegations in the complaint.  *Boland v. Providence Constr. Corp.*, 304 F.R.D. 31, 35 (D.D.C. 2014).  Second, unless "the plaintiff's claim is for a sum certain or a sum that can be made certain by computation," the plaintiff must apply to the court for a default judgment.  Fed. R. Civ. P. 55(b).  At that point, the plaintiff "must prove his entitlement to the relief requested using detailed affidavits or documentary evidence on which the court may rely."  *Ventura v. L.A. Howard Constr. Co.*, 134 F. Supp. 3d 99, 103 (D.D.C. 2015) (citation modified).

"[T]he defendant['s] default notwithstanding, the plaintiff is entitled to a default judgment only if the complaint states a claim for relief." *Jackson v. Corr. Corp. of Am.*, 564 F. Supp. 2d 22, 27 (D.D.C. 2008) (citation modified). "Conceptually, a motion for default judgment is like a reverse motion to dismiss for failure to state a claim." *United States v. $1,071,251.44 of Funds Associated with Mingzheng Int'l Trading Ltd.*, 324 F. Supp. 3d 38, 45 (D.D.C. 2018) (citation modified). As such, a plaintiff seeking a default judgment must still "plead factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation modified).

For the reasons already stated, Arnold's Complaint does not meet this standard. Arnold has failed to state a claim as to his federal claims, and the Court will decline to exercise jurisdiction over his state law claims. Accordingly, the Court will deny Arnold's motions for default judgment.

## CONCLUSION

For the foregoing reasons, the Court grants the defendants' motions to dismiss, Dkt. 31; Dkt. 32. As to defendants Kim, Offit Kurman Attorneys at Law, and Holmes, Counts I, IV, and VI are dismissed without prejudice for failure to state a claim, and Counts II, III, V, VII, VIII, IX, and X are dismissed without prejudice for lack of subject matter jurisdiction. Furthermore, the Court denies without prejudice the plaintiff's motions for default judgment against Thomas and Walker, Dkt. 52; Dkt. 53. A separate order consistent with this decision accompanies this memorandum opinion.

DABNEY L. FRIEDRICH
United States District Judge

January 22, 2026